1
2
3
4
5
6
7                          **UNITED STATES DISTRICT COURT**
8                          **CENTRAL DISTRICT OF CALIFORNIA**
9

10  JAN JENSEN,                              ) NO. SACV 04-00850 (Mc)
                                             )
11              Plaintiff,                   )
                                             ) MEMORANDUM OF DECISION
12       v.                                  ) AND ORDER IN A SOCIAL
                                             ) SECURITY CASE
13  JO ANNE B. BARNHART,                     )
    Commissioner of the                      )
14  Social Security Administration,          )
                                             )
15              Defendant.                   )
16  _____)

17       The plaintiff, JAN JENSEN, filed the present action for review of
18  a final determination of the Commissioner of Social Security (the
19  "Commissioner") that the plaintiff is not disabled and not entitled to
20  Disability Insurance Benefits ("DIB").  For the reasons set forth
21  below, the court finds that the decision of the Commissioner is
22  supported by substantial evidence and is free of legal error.  The
23  matter is, therefore, affirmed.
24                               **BACKGROUND**
25       The plaintiff filed an application for DIB under the Social
26  Security Act (the "Act") on October 9, 2002. [Administrative Record
27  ("AR") 35-37.]  The Commissioner denied the application initially and
28  on reconsideration. [AR 25-28, 30-33.]  At the plaintiff's request, an

administrative hearing was held before Administrative Law Judge Helen E. Hesse (the "ALJ") on May 5, 2004. [AR 210-42.]  On May 18, 2004, the ALJ filed a decision concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 10-15.]  The Appeals Council denied the plaintiff's request for review of the ALJ's decision. [AR 3-5.]  The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action.  The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge.  The parties have entered into a Joint Stipulation setting forth their arguments.

## STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human Services, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence. See Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the court must sustain the Commissioner's

decision. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

## THE FIVE-STEP SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, the Commissioner determines whether the person is engaged in "substantial gainful activity." If so, the Commissioner denies disability benefits. Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits. Third, if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled. Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, the Commissioner denies benefits. Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to disability benefits only if he or she is unable to perform other work. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## FINDINGS OF THE ALJ

The plaintiff was born March 1, 1961. [AR 11, 35.] The plaintiff has a high school education [AR 11, 47] and past relevant work

- 3 -

experience as a cashier I/accounts receivable clerk and cashier supervisor [AR 11, 42, 54]. The plaintiff alleges that she has been unable to work since May 13, 2002, because of undifferentiated connective tissue disorder, fibromyalgia, and depression. [AR 41.]

    The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ found that the plaintiff had diffuse pain syndrome with diffuse tenderness, obesity, and major depression versus major depressive disorder which were considered "severe" but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. The ALJ further found that the plaintiff's allegations regarding her limitations were not totally credible and that the plaintiff retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The plaintiff had no limitations in her ability to sit, stand or walk. The plaintiff could occasionally climb stairs, bend, balance, stoop, kneel, crouch and crawl. The plaintiff should avoid climbing ladders or scaffolds. She was precluded from working at unprotected heights or dangerous and fast moving machinery due to her medications. The plaintiff was limited to jobs where no hypervigilence was required and where she would not be in charge of the safety operations of others. The plaintiff should avoid intense interpersonal relationships and jobs with high production, quota or rapid assembly line work. The plaintiff could perform work at a moderate pace with moderate stress. The ALJ determined that the plaintiff's past relevant work as cashier I/accounts receivable clerk did not require the performance of work-related activities precluded by her residual functional capacity. [AR

14.] The ALJ, therefore, concluded that the plaintiff was not prevented from performing her past relevant work and that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 15.]

## THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed properly to consider the assessment completed by the plaintiff's treating therapist.

## DISCUSSION

The plaintiff contends that the ALJ improperly failed to discuss the mental health assessment of Gerald Ellenson,[1] the plaintiff's "treating therapist"[2] [Joint Stipulation at 2] that the plaintiff was "disabled" [Joint Stipulation at 3]. The plaintiff further contends that Mr. Ellenson "supported his opinion of disability by opining that the Plaintiff has a Global Assessment of Functioning[3] of 50." According to the plaintiff, "a score of 48-50 indicates 'serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to hold a job),'" citing the Diagnostic and

---

[1] The plaintiff incorrectly identifies MHS Ellenson as "Henson." [See AR 203.]

[2] Although the plaintiff testified that her "coordinator," presumably referring to Mr. Ellenson, talked to her more than her psychiatrist, there is no evidence that Mr. Ellenson was the plaintiff's treating therapist. The plaintiff testified that her treating psychiatrist was Dr. Shazdoff. The plaintiff further testified that although she tried "one on one therapy," she did not have the money to pursue such therapy. [AR 220-21.] Mr. Ellenson, in turn, never indicated that he was treating the plaintiff but rather performed evaluations. [See AR 148-59, 203.] He referred the plaintiff to an outside agency for counseling. [AR 131.]

[3] The GAF scale reports a "clinician's judgment of the individual's overall level of functioning" which is used in "planning treatment and measuring its impact, and in predicting outcome." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders IV-TR ("DSM") 32 (4th ed. 2000).

- 5 -

<u>Statistical Manual of Mental Disorders IV-TR</u> at page 34. Although the plaintiff concedes that Mr. Ellenson is not a physician or other "acceptable medical source," the plaintiff argues that Mr. Ellenson's assessment must still be considered under 20 C.F.R. § 404.1513 (d)(1).[4] [Joint Stipulation at 3.]

20 C.F.R. § 404.1513(d)(1) provides that in addition to evidence from acceptable medical sources, the Commissioner "<u>may</u> also use evidence from other sources (emphasis added)," such as therapists, as evidence of the severity the claimant's impairment and how it affects the claimant's ability to work.

The plaintiff's argument that the ALJ failed adequately to consider Mr. Ellenson's opinions of disability pursuant to 20 C.F.R. § 404.1513(d)(1) is not persuasive for several reasons.

First, contrary to the plaintiff's assertions, Mr. Ellenson did not opine that the plaintiff was disabled. The plaintiff relies upon the Psychosocial Assessment made by Mr. Ellenson on March 4, 2003, in which Mr. Ellenson indicated under Axis IV that the plaintiff had psychosocial and environmental problems. He listed the following factors: "disabled, no health coverage, low income, housing at risk, no support system." [AR 157.] However, there is no evidence that this represented Mr. Ellenson's opinion of disability rather than the plaintiff's own self report. This is more evident when one year later, on March 9, 2004, Mr. Ellenson completed a Periodic Re-Evaluation/ Problem List. He indicated that the plaintiff had no impairment in community functioning in the area of educational or vocational

---

[4] Although the plaintiff cited 20 C.F.R. §416.913(d)(1), there is no evidence of an SSI application in the record. 20 C.F.R. § 404.1513(d)(1) is the corresponding regulation for DIB applications.

- 6 -

functioning because the plaintiff "considers self to be disabled-no wishes or aspirations." [AR 179.]

Other evidence also clearly shows that Mr. Ellenson did not wish to express any opinions concerning the plaintiff's disability or functional limitations without the concurrence of the treating psychiatrist. When the plaintiff brought in a Work Capacity Evaluation form to be completed, presumably in connection with this application, Mr. Ellenson reviewed the form with the plaintiff, and he reviewed the physician's treatment notes and the initial mental status evaluation. Although Mr. Ellenson completed the form, he indicated that he wished to discuss the form with the treating physician and "obtain her signature so that the form may be forwarded for processing by the Custodian of Records." [AR 201.] However, no Work Capacity Evaluation has been submitted by the plaintiff or by the County of Orange Health Care Agency either by the psychiatrist or by Mr. Ellenson.

The plaintiff also suggests that Mr. Ellenson's assessment of the GAF indicates his opinion that the plaintiff cannot work. However, while the GAF may be useful in assessing an individual's mental functioning capabilities, it is not determinative. [See Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy")]. First, there is no direct correlation between the GAF and the severity requirements of the Act. See 65 FR 50764.[5]

---

[5] 65 FR 50764-65 indicates that there is no direct correlation between the GAF and the severity requirements of the mental impairment listings.

Next, the GAF does not necessarily reflect the plaintiff's functional limitations or, if it does, may not reflect the severity of psychopathology.

> "The description of each 10-point range in the GAF scale has two components: the first part covers symptom severity, and the second part covers functioning. The GAF rating is within a particular decile if <u>either</u> the symptom severity <u>or</u> the level of functioning falls within the range. (Emphasis in original.) For example, the first part of the range 40-50 describes 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)' and the second part includes 'any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' It should be noted that in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two. For example, the GAF rating for an individual who is a significant danger to self but is otherwise functioning well would be below 20. Similarly, the GAF rating for an individual with minimal psychological symptomatology but significant impairment in functioning (e.g., an individual whose excessive preoccupation with substance use has resulted in loss of job and friends, but no other psychopatholgy) would be 40 or lower."[6]

In the plaintiff's case, the plaintiff intermittently alleged some suicidal ideation and an attempt [AR 131, 140, 155], suggesting

---

[6] American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders IV-Tr</u>, 32-33 (4th ed. 2000).

"serious symptoms." On the other hand, Mr. Ellenson's assessments of functioning do not reflect serious impairment in social, occupational or school functioning. For example, his initial Community Functioning Evaluation revealed that the plaintiff socially interacted with friends on a daily basis, although such contacts were less than "expectable," and that the plaintiff was able to independently attend to her hygiene and grooming, shopping and cooking, housekeeping duties, keeping appointments, and traveling by car. [AR 149.] One year later, the plaintiff was assessed as having no impairment in functioning in her living arrangements or in managing her "basic ADLS." The plaintiff was socially isolative, "but that is largely by choice." Likewise, although Mr. Ellenson indicated that the plaintiff's symptoms contributed to her disability, he also assessed that there was no impairment in educational or vocational functioning, notwithstanding the fact that the plaintiff was not working because the plaintiff "consider[ed] self to be disabled." [AR 179.] He did not indicate that the plaintiff actually was disabled.

Thus, had the ALJ, in fact, failed to address Mr. Ellenson's "opinion" in her decision, there would have been no error, since the "opinions" cited by the plaintiff as being Mr. Ellenson's are neither significant nor probative and generally reflect the plaintiff's self-evaluation. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984), quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981)("The Secretary, however, need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected'").

However, as argued by the Commissioner, the ALJ had in fact, addressed Mr. Ellenson's assessment. She noted that "[m]ental health

notes from March, 2003, indicate the claimant had suicidal ideation at least weekly.  She had no obvious delusions but had simple hallucinations (Exhibit 6F/27)."[7]  On the other hand, as the ALJ further noted, "[t]wo weeks later, [the plaintiff] had no suicidal ideation, no delusions, no hallucinations and no paranoia (Exhibit 6F/6)," as reflected in the treating psychiatrist's evaluation. [AR 135; see also AR 185, 191, 192, 193, 204, 205, 206, 207; but see AR 187, 193, 203.] Clearly, therefore, the ALJ properly considered the assessment of Mr. Ellenson as required under 20 C.F.R. § 404.1513(d)(1).

**CONCLUSION**

After careful consideration of the complaint, joint stipulation of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

**ORDER**

IT IS ORDERED that judgment be entered in favor of the Commissioner and against the plaintiff.

Dated: January 26, 2006

/s/
JAMES W. McMAHON
United States Magistrate Judge

---

[7] Exhibit 6F/27 is a page from Mr. Ellenson's initial Psychosocial Assessment and Mental Status Examination. [AR 156.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28